**TEX–AIR HELICOPTERS, INC., Appellant,**

v.

**GALVESTON COUNTY APPRAISAL REVIEW BOARD and Galveston Central Appraisal District, Appellees.**

No. 14–00–00869–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 21, 2002.

Jack Holland, Houston, for appellants.

Kenneth J. Bower, Galveston, for appellees.

Panel consists of Justices YATES, FOWLER, and WITTIG.*

## OPINION

WANDA McKEE FOWLER, Justice.

This case involves a dispute over property taxes owed by appellant Tex–Air Helicopters, Inc. on five helicopters for tax years 1994 and 1995. Tex–Air presents three issues regarding the denial of leave to amend Tex–Air's petition, the failure of the trial court to make an allocation for 1995 under § 21.05 of the Texas Tax Code, and an alleged constitutional defect in § 42.29 of the Texas Tax Code. On cross-appeal, appellees assert that the trial court misapplied § 21.05[1] and that this statute violates article VIII, §§ 1 and 2, of the Texas Constitution ("Article VIII"). We find no error in the trial court's denial of Tex–Air's motion for leave to amend its petition and in the trial court's rejection of the constitutional challenges to these two statutes. Except for the trial court's failure to make an allocation for Helicopter N6037J # 5438 in 1995, we conclude that

---

* Senior Justice Don Wittig sitting by assignment.

1. Unless otherwise stated, all statutory references in this opinion are to the Texas Tax Code.

the trial court correctly applied § 21.05. We sustain Tex–Air's second issue and hold that the 1995 taxable value for Helicopter N6037J # 5438 is $27,455.47. We overrule all other issues presented by the parties, modify the trial court's judgment regarding this one allocation, and, as modified, we affirm the trial court's judgment.

## Background

This case concerns the allocation of property taxes under § 21.05 for the tax years 1994 and 1995 as to five helicopters owned by Tex–Air. Tex–Air based these helicopters out of Scholes Field in Galveston. Tex–Air routinely used these helicopters to fly personnel and materials to platforms on the Outer Continental Shelf. Initially, this suit involved only the 1994 tax assessments. Tex–Air did not dispute the fair market value of the helicopters for 1994; however, Tex–Air asserted that it was entitled to allocations under § 21.05, so that it would only be taxed on the portion of the fair market value that fairly reflects the use of these helicopters in Texas. The Galveston Central Appraisal District refused to grant these allocations. The Galveston County Appraisal Review Board affirmed the appraisal district's decision, and Tex–Air appealed to the district court.

Tex–Air claimed in the district court that it was entitled to allocations under § 21.05. The Galveston County Appraisal Review Board and the Galveston Central Appraisal District (collectively "GCAD") responded by arguing that § 21.05 violated the null-and-void clause of Article VIII—both on its face and as applied—by granting an unconstitutional exemption from property tax. GCAD moved for summary judgment on this basis. Tex–Air filed a cross-motion for summary judgment. The

trial court denied Tex–Air's motion and granted GCAD's motion. This court reversed and remanded, and held that § 21.05 did not violate the Texas Constitution. *Tex–Air Helicopters, Inc. v. Appraisal Review Bd. of Galveston County,* 940 S.W.2d 299, 303 (Tex.App.—Houston [14th Dist.] 1997), *aff'd,* 970 S.W.2d 530 (Tex.1998) ("First Appeal"). In the First Appeal, this court found no violation of Article VIII, holding that § 21.05 is a valuation statute rather than a tax exemption. *Id.* The supreme court affirmed, *Appraisal Review Bd. of Galveston County v. Tex–Air Helicopters, Inc.,* 970 S.W.2d 530, 533–34 (Tex.1998), disapproving of the constitutional analysis from the *Aransas County* case [2] on which GCAD had relied and holding that § 21.05 is constitutional on its face. *Id.* at 534. The court also rejected the as-applied challenge, holding that Tex–Air's failure to pay property tax in any other jurisdiction does not make § 21.05 unconstitutional as applied. *Id.* at 534–35. The court held that § 21.05 is not an unconstitutional exemption but rather an attempt to comply with the mandates of the United States Constitution by allocating to Texas the portion of a commercial aircraft's fair market value that fairly reflects its use in Texas. *Id.*

By the time the issues regarding the 1994 taxes were remanded to the district court, Tex–Air had disputed and appealed GCAD's 1995 assessments of its helicopters. On remand, the district court consolidated Tex–Air's appeal of GCAD's failure to allocate for 1995 with the remanded case. GCAD added new claims, arguing as follows: (1) the allocation formula in § 21.05(b) should not be used, and (2) this formula is unconstitutional because it is arbitrary and capricious. In addition, GCAD continued to assert that § 21.05 is

2. *Aransas County Appraisal Review Bd. v. Texas Gulf Coast Shrimp Co.,* 707 S.W.2d 186

(Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

an unconstitutional tax exemption under Article VIII. Although in one of its trial briefs, GCAD asked the district court to consider two suggested formulas as alternatives to the formula in § 21.05(b), at trial, GCAD did not assert that the § 21.05(b) formula failed to fairly reflect the helicopters' use in Texas.

At trial, there were only four witnesses. Edward Behne, CEO of Tex–Air, testified as to the number of revenue departures there were for each of the five helicopters during 1994 and 1995. Behne also testified as follows: (1) Tex–Air flies to platforms that are on the Outer Continental Shelf; (2) Tex–Air does not fly to any platforms that are in state waters; (3) Helicopter N6037J # 5438 did not go into Louisiana in 1994; and (4) in counting revenue departures for the § 21.05(b) formula, Tex–Air only counted departures that left Texas.

Lawrence DeVore was GCAD's expert witness for counting revenue departures. DeVore reviewed Tex–Air's flight logs, counting all take-offs from Texas as revenue departures and therefore calculating a higher number of revenue departures than Tex–Air. Based on his review of the logs, DeVore also gave his opinion as to the number of days that each of the helicopters made stops in Louisiana in 1993 and 1994. DeVore admitted that he was not familiar with tax-allocation issues, that he was not qualified to give an opinion as to these issues, and that he had not made any calculations apportioning the amount of time that these helicopters operated in and outside of Texas.

Jack Holland testified as to Tex–Air's reasonable attorney's fees. Finally, Mitchell McCullough of GCAD answered questions from Tex–Air in an attempt by Tex–Air to show that GCAD lacks standing to assert that the Texas Tax Code is unconstitutional.

Although DeVore testified as to the number of revenue departures from Texas and Louisiana and as to the number of days the helicopters stopped in Louisiana, GCAD put on no evidence as to what portion of the use of these helicopters occurred in Texas and what portion occurred outside of Texas. GCAD also put on no evidence to prove the allocation amounts that would be yielded by any of its proposed alternative formulas.

After the close of evidence and in its post-trial brief, GCAD argued that the § 21.05(b) formula did not produce a fair reflection of the helicopters' use in Texas, and GCAD gave the court the allocation figures that would be produced under GCAD's two alternative formulas. Also post-trial, Tex–Air filed a motion for leave to amend its petition to assert that its helicopters are immune from taxation under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333. The trial court denied this motion.

The court entered judgment, issued findings of fact and conclusions of law, and also, for the relevant tax years, made specific factual findings as to the revenue departures from Texas for each helicopter. In these findings, the court agreed with Tex–Air's calculation of the revenue departures, and GCAD has not challenged these findings of fact on appeal. The trial court found that § 21.05 is constitutional and that all five helicopters had a taxable situs in Louisiana in 1993 (used to calculate the 1994 allocation). The trial court also found that Helicopter N6037J # 5438 was never in Louisiana in 1994, had no taxable situs in Louisiana in 1994, and therefore cannot receive a § 21.05 allocation for 1995. The trial court found that the other four helicopters had a taxable situs in Louisiana in 1994 (used to calculate the 1995 allocation). Finally, the court denied Tex–Air's request for attorney's fees.

## Issues Presented

Tex–Air presents the following issues: (1) Did the trial court abuse its discretion in denying Tex–Air's motion for leave to amend its petition? (2) Did the trial court err by not making an allocation under § 21.05 as to one of the helicopters for the 1995 tax year? and (3) Does § 42.29, as applied to Tex–Air, violate the Equal Protection Clause of the United States Constitution?

On cross-appeal, GCAD presents the following issues: (1) Did the § 21.05 allocations for three of the helicopters constitute unconstitutional tax exemptions under Article VIII? and (2) Was § 21.05 (a) improperly applied or (b) if properly applied, was it arbitrary and capricious in violation of Article VIII?

## Standards of Review

Two standards of review apply in this case. First, as to the trial court's denial of Tex–Air's motion for leave to amend its petition, this court reviews this ruling for an abuse of discretion because this ruling involved issues of surprise and prejudice and because the amendment asserts a new claim or defense and GCAD objected. Tex.R. Civ. P. 63, 66; *Hardin v. Hardin*, 597 S.W.2d 347, 350–51 (Tex.1980).

■ Second, we review the trial court's interpretation of applicable statutes de novo. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex.1989). In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). We presume that the Legislature intended the plain meaning of its words. *Id.* If possible, we must ascertain the Legislature's intent from the language it used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* When interpreting a statute, we

consider the entire act, its nature and object, and the consequences that would follow from each construction. *Atascosa County v. Atascosa County Appraisal Dist.*, 990 S.W.2d 255, 258 (Tex.1999). We must reject any statutory interpretation that defeats the legislative purpose. *Id.*

## 1. Did the Trial Court Abuse Its Discretion by Denying Tex–Air's Motion for Leave to Amend Its Petition?

■ In its first issue, Tex–Air asserts that the trial court abused its discretion by denying Tex–Air's motion for leave to amend its petition. This case was tried to the bench on January 19, 2000. During his closing argument, counsel for Tex–Air asserted for the first time that the helicopters are exempt from state taxation under the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1301–1356a ("OCSLA"). GCAD's counsel responded during his closing argument by stating that there were no pleadings to support this new claim of immunity under the OCSLA, that this claim was waived by failure to plead it, and that GCAD was surprised by Tex–Air's raising this claim for the first time after the close of the evidence. The trial court gave all parties ten days (or until January 29, 2000) to file any supplemental briefs that they wanted the court to consider. In its supplemental brief, filed on January 31, 2000, Tex–Air did not assert its exemption argument under the OCSLA, and it did not seek leave to amend its petition. Not until April 3, 2000, did Tex–Air file its motion for leave to amend its petition to add a claim of exemption from taxation under the OCSLA. The trial court denied this motion.

Tex–Air asserts that the trial court abused its discretion in denying this motion because the OCSLA exemption issue had been tried by consent and because GCAD did not show that this amendment

would cause surprise or prejudice. By its response during closing arguments and its written response in opposition to Tex–Air's motion for leave, GCAD sufficiently objected to Tex Air's attempt to raise its OCSLA exemption argument after the close of evidence.

While Tex–Air did introduce evidence at trial relating to the Outer Continental Shelf without objection, this evidence was relevant to the issues already raised by the pleadings—for example, the issue of the amount of time that the helicopters spent outside of Texas. Therefore, GCAD did not consent to the trial of any OCSLA exemption issue by its failure to object to this evidence. *Born v. Virginia City Dance Hall & Saloon,* 857 S.W.2d 951, 956 (Tex.App.—Houston [14th Dist.] 1993, writ denied).

Furthermore, Tex–Air did not seek leave until more than seventy days after the trial had ended and more than sixty days after the court's deadline for briefing legal issues. On its face, the amendment was calculated to surprise GCAD, and allowing the amendment would have reshaped the issues in the case after trial and prejudiced GCAD. *See Hardin,* 597 S.W.2d at 348–50. Consequently, the trial court did not abuse its discretion in denying Tex–Air leave to amend its petition, and we overrule Tex–Air's first issue.

## 2. As Applied to Tex–Air, Did § 42.29 Violate the Equal Protection Clause?

■ In its third issue,[3] Tex–Air asserts that, as applied to Tex–Air, § 42.29 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[4] Under the Texas Tax Code, a property owner who is suc-

cessful in a tax appeal can recover reasonable attorney's fees only in two instances: (1) excessive-appraisal claims; and (2) unequal-appraisal claims. *See* § 42.29. Tex–Air asserts that § 42.29 violates the Equal Protection Clause because it gives attorney's fees to these two categories of successful taxpayers but not to other successful taxpayers. Tex–Air argues that this is unfair because, according to Tex–Air, most taxpayers have significantly less resources to finance litigation than the taxing authorities do. As we explain below, we reject this argument and hold that § 42.29 is constitutional.

■ Tex–Air bears the burden of proving that § 42.29 is unconstitutional, *Edgewood Indep. Sch. Dist. v. Meno,* 917 S.W.2d 717, 725 (Tex.1995), and, if possible, we must construe § 42.29 to render it constitutional. *Cash Am. Int'l, Inc. v. Bennett,* 35 S.W.3d 12, 18 n. 4 (Tex.2000). Additionally, because the classification made by § 42.29 does not impinge on a fundamental right or distinguish between persons on a suspect basis, § 42.29 need only be rationally related to a legitimate governmental purpose to survive Tex–Air's equal-protection challenge. *Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 451 (Tex. 2000). In attacking the rationality of § 42.29, Tex–Air has the burden to negate every conceivable basis which might support § 42.29. *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993). The United States Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and

---

3. We will address Tex–Air's second issue at the end of the opinion.

4. On appeal, Tex–Air's argument and authorities do not refer to any alleged violation of equal protection under the Texas Constitu-

tion; however, if Tex–Air had assigned error in this regard, the analysis would be the same. *See Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 451 (Tex.2000).

that judicial intervention is generally unwarranted no matter how unwisely this court may think a political branch has acted. *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979). Thus, § 42.29 does not violate the Equal Protection Clause unless "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Id.*, 440 U.S. at 97, 99 S.Ct. at 943.

Tex–Air has not satisfied this heavy burden. We conclude that there is a rational basis for allowing attorney's fees to successful landowners asserting excessive-appraisal and uneven-appraisal claims but not to successful landowners in other cases under the Texas Tax Code. *See Missouri, K. & T. Ry. v. Cade*, 233 U.S. 642, 650–52, 34 S.Ct. 678, 680–81, 58 L.Ed. 1135 (1914) (predecessor statute to Chapter 38 of Texas Civil Practice and Remedies Code does not violate the Equal Protection Clause even though it allows recovery of attorney's fees to successful claimants for certain claims but not for other claims); *Lake LBJ Mun. Util. Dist. v. Coulson*, 839 S.W.2d 880, 894–95 (Tex.App.—Austin 1992, no writ) (predecessor statute to Chapter 38 of Texas Civil Practice and Remedies Code does not violate the Equal Protection Clause even though it allows governmental units to recover attorney's fees when they are plaintiffs but does not allow attorney's fees to be recovered against governmental units when they are defendants). The Legislature might reasonably have wanted to give taxing authorities an incentive to avoid unequal or excessive appraisals and to expeditiously

settle disputes relating to them. Preserving the integrity and fairness of property tax appraisals is a legitimate state interest, and awarding attorney's fees to taxpayers who successfully challenge unequal or excessive appraisals rationally relates to this interest.

Rejecting an equal-protection attack on the predecessor statute to Chapter 38 of the Texas Civil Practice and Remedies Code, the United States Supreme Court said the following:

> [T]he 14th Amendment does not require that state laws shall be perfect; and we cannot judicially denounce this act as based upon arbitrary distinctions, in view of the wide discretion that must necessarily reside in a state legislature about resorting to classification when establishing regulations for the welfare of those for whom they legislate.

*Cade*, 233 U.S. at 650, 34 S.Ct. at 680.

In sum, we hold that Tex–Air did not prove that § 42.29, as applied to Tex–Air, violates the Equal Protection Clause of the United States Constitution, and we overrule Tex–Air's third issue.

### 3. Did GCAD Prove that the § 21.05 Allocations for Three of the Helicopters Are Unconstitutional Tax Exemptions?

▮▮▮ The Texas Constitution declares that "all laws exempting property from taxation other than the property mentioned in [Article VIII, § 2] shall be null and void." TEX. CONST. art. VIII, § 2(a). In its first cross-issue, GCAD asserts that, as applied to three of Tex–Air's helicopters, the § 21.05 allocations violate this null-and-void clause of the Texas Constitution.[5] The parties agree that the

---

5. GCAD also asserts that all exemptions not authorized by Article VIII, § 2, violate the requirements of Article VIII, § 1. Therefore, GCAD argues that § 21.05 violates Article VIII, § 1, because it is an exemption not authorized by Article VIII, § 2. GCAD does not argue that § 21.05 would violate Article VIII, § 1, if § 21.05 were not an unconstitutional exemption under Article VIII, § 2. Therefore, this argument under Article VIII,

helicopters are not the type of property mentioned in Article VIII, § 2 as being properly the subject of laws exempting property from taxation.

Section 21.05 provides in pertinent part as follows:

(a) If a commercial aircraft that is taxable by a taxing unit is used both in this state and outside this state, the appraisal office shall allocate to this state the portion of the fair market value of the aircraft that fairly reflects its use in this state. The appraisal office shall not allocate to this state the portion of the total market value of the aircraft that fairly reflects its use beyond the boundaries of this state.

(b) The allocable portion of the total fair market value of a commercial aircraft that is taxable in this state is presumed to be the fair market value of the aircraft multiplied by a fraction, the numerator of which is the product of 1.5 and the number of revenue departures by the aircraft from Texas during the year preceding the tax year, and the denomi-

nator of which is the greater of (1) 8,760, or (2) the numerator.

TEX. TAX CODE § 21.05(a) & (b).

 GCAD asserts that this statute, as applied to Tex–Air, exempts three of Tex–Air's helicopters from taxation in violation of the null-and-void clause of the Texas Constitution.[6] For the § 21.05 allocations for the three helicopters in question to be constitutional, GCAD claims these allocations must be required by the United States Constitution based on proof of a second tax situs for the helicopters.[7] GCAD asserts that Tex–Air had the burden of proving a second tax situs for these helicopters, that it failed to carry its burden, and that the trial court's findings of a second tax situs for these helicopters was not supported by legally or factually sufficient evidence. However, GCAD misstates the burden of proof. Courts apply a presumption of constitutionality to statutes; therefore, the party alleging that a statute is unconstitutional has the burden of proof. *Edgewood Indep. Sch. Dist*, 917 S.W.2d at 725. Here, GCAD had the bur-

---

§ 1, stands or falls along with GCAD's argument under Article VIII, § 2. We do not decide whether an unconstitutional exemption under Article VIII, § 2, also violates Article VIII, § 1. Even if this legal proposition were correct, § 21.05 would not violate Article VIII, § 1, because we conclude that § 21.05 does not violate Article VIII, § 2.

6. Tex–Air argues that GCAD lacks standing to challenge the constitutionality of § 21.05 because the manner in which Tex–Air is taxed and the constitutionality of § 21.05 do not threaten any harm, damage, or restriction to GCAD. However, the Texas Supreme Court has already held that appraisal districts have standing to challenge the constitutionality of tax code provisions. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex.1996). Thus, this argument fails.

7. Tex–Air asserts that, under principles of res judicata, collateral estoppel, and law of the case, GCAD cannot relitigate the constitution-

ality of § 21.05 in light of the Texas Supreme Court's opinion in the First Appeal. Res judicata and collateral estoppel do not apply here because the opinion in question was rendered in this case, so there is no judgment from a previous case. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628–29 (Tex.1992) (res judicata); *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984) (collateral estoppel). The law-of-the-case doctrine does not prevent GCAD from asserting that, as applied, § 21.05 is an unconstitutional tax exemption and that it is arbitrary and capricious in violation of Article VIII. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630–31 (Tex.1986). Nonetheless, we are bound by the legal pronouncements of the supreme court in its opinion in the First Appeal and, unless clearly erroneous, we are bound by the legal pronouncements in our opinion in the First Appeal. *See id.; Miller v. Winn*, 28 S.W.2d 578, 580 (Tex. Civ.App.—Fort Worth 1930, writ ref'd).

den of proving all facts necessary to show that § 21.05 is unconstitutional as applied to Tex–Air. *See id.* The trial court, as have other courts, including the Texas Supreme Court, held that § 21.05 is constitutional. As we explain below, we affirm the trial court's finding of constitutionality and hold that GCAD did not satisfy its burden of proving that this statute is unconstitutional as applied to Tex–Air.

■ GCAD asserts that, under the Texas Supreme Court's opinion in the First Appeal, the § 21.05 allocations are unconstitutional tax exemptions if Texas was the only jurisdiction that could have taxed these helicopters.[8] *See* Tex. Const. art. VIII, §§ 1, 2; *Appraisal Review Bd. of Galveston County,* 970 S.W.2d at 533–35. The trial court found a Louisiana tax situs for the three helicopters in question for 1993. The trial court found a Louisiana tax situs for two of these helicopters for 1994 but found that one of the helicopters—Helicopter N6037J # 5438—had no tax situs in Louisiana for 1994. GCAD challenges all findings of a Louisiana tax situs for the three helicopters in question. We agree with GCAD that the evidence at trial was legally insufficient to support these findings of a Louisiana tax situs for the three helicopters in 1993 and for the two helicopters in 1994. However, this does not end our inquiry because we still have to determine whether the evidence at trial was sufficient to supply the omitted and unrequested finding that GCAD did not prove that Texas was the only jurisdiction that could have taxed these helicopters. *Edgewood Indep. Sch. Dist,* 917 S.W.2d at 725 (party asserting unconstitutionality has the evidentiary burden of proving all facts necessary to show violation of constitution); *Vickery v. Commission for Lawyer Discipline,* 5 S.W.3d 241, 253 (Tex.App.—Houston [14th Dist.] 1999, pet. denied) (under Tex.R. Civ. P. 299, when the trial court finds one or more elements of a ground of recovery or defense, omitted and unrequested elements, when supported by evidence, will be supplied by presumption in support of the trial court's judgment). As we explain in more detail below, evidence was introduced to show that the helicopters' destinations were on the Outer Continental Shelf, which is a possible tax situs. Consequently, the evidence was sufficient to supply a finding that Texas was not the only jurisdiction that could have taxed the property.

■ When used in a legal rather than a geographical sense, the term "Outer Continental Shelf" means the submerged lands lying seaward and outside of state maritime boundaries up to a point at least 200 nautical miles from the coastline of the United States. OCSLA, 43 U.S.C. §§ 1301–1356a; Proclamation No. 5030, 48 Fed. Reg. 10605 (Mar. 10, 1983) (presidential proclamation claiming, as to the seabed and subsoil up to 200 nautical miles from the coastline of the United States, sovereign rights for exploration, exploitation, conservation, and management of natural resources and jurisdiction over the establishment of artificial islands, installations, and structures having economic purposes); *FMC Corp. v. Commissioner,* 100 T.C. 595, 597, 602–08, 1993 WL 221055 (1993) (holding that the United States claims exclusive economic development rights to the natural resources of the subsoil and seabed of the Outer Continental Shelf, extending 200 miles from the coastline, and that, for purposes of a tax deduction under the Internal Revenue Code, platforms on the Outer

---

8. It is undisputed that the helicopters were not actually taxed in any jurisdiction other than Texas.

Continental Shelf are considered to be inside the United States). Federal law governs the Outer Continental Shelf and all artificial islands, installations, and other devices permanently or temporarily attached to it that are used to explore for, develop, produce or transport resources therefrom ("OCS"). OCSLA, 43 U.S.C. § 1333. Under the OCSLA, the OCS is an exclusively federal area, governed by federal law, although, in many instances, the law of the adjacent state is adopted as surrogate federal law to the extent that it is not inconsistent with applicable federal law.[9] *Id.; Shell Oil Co. v. Iowa Dep't of Rev.,* 488 U.S. 19, 30, 109 S.Ct. 278, 284 & n. 9, 102 L.Ed.2d 186 (1988); *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 217, 106 S.Ct. 2485, 2491, 91 L.Ed.2d 174 (1986).

Texas has no taxing jurisdiction over the OCS, and Texas may not levy direct taxes on the OCS, OCS production, and OCS activity. OCSLA, 43 U.S.C. § 1333(a)(2)(A) ("State taxation laws shall not apply to the outer Continental Shelf."); *Shell Oil Co.,* 488 U.S. at 24–32, 109 S.Ct. at 281–85 (states have no taxing jurisdiction over the OCS and may not levy direct taxes on OCS activity; however, states may include income derived from the OCS as out-of-state income in an allocation formula designed to determine the amount of corporate income that fairly reflects income from in-state activity); *Maryland v. Louisiana,* 451 U.S. 725, 752 n. 26, 101 S.Ct. 2114, 2132 n. 26, 68 L.Ed.2d 576 (1981) (noting that states may not impose severance taxes on the OCS and that determining the proper charges for development of the natural resources on the OCS is a matter solely within the province of the federal government). Even though Congress has not levied an ad valorem tax on personal property used on the OCS, the OCS is a possible tax situs where Congress could have taxed the helicopters if they had a tax situs on the OCS. *See* OCSLA, 43 U.S.C. § 1333; *Shell Oil Co.,* 488 U.S. at 24–32, 109 S.Ct. at 281–85.

■ A jurisdiction other than that of the owner's domicile can tax units of transportation if the owner continually uses these units in the non-domiciliary jurisdiction—either on a regular or an irregular basis. *Greyhound Lines, Inc. v. Board of Equalization for City of Fort Worth,* 419 S.W.2d 345, 349 (Tex.1967). The evidence at trial was sufficient to show a continual use of the helicopters in question to transport personnel and materials to OCS platforms—areas of federal jurisdiction for direct taxation purposes. The evidence was sufficient to support an implied finding that GCAD did not prove Texas was the only jurisdiction that could have taxed these helicopters. GCAD did not prove that Texas was the only possible tax situs for these helicopters. Under GCAD's argument based on the Texas Supreme Court's opinion in the First Appeal, GCAD did not carry its burden of proving that, as applied, § 21.05 violates the null-and-void clause of the Texas Constitution.

GCAD also maintains, as it has done steadfastly throughout this case, that the allocation formula in § 21.05(b) is not a method of valuation but rather an unconstitutional tax exemption. We reach a different conclusion; the § 21.05 allocation is a manner of determining value rather than a "law exempting property from taxation" under Article VIII.[10] *See* TEX. CONST. art. VIII, § 2(a); *Enron Corp. v. Spring In-*

---

**9.** Although we have held that the trial court did not abuse its discretion in denying Tex–Air leave to amend its petition to allege that it was *exempt* from taxation under the OCSLA, this ruling does not prevent us from taking the OCSLA into account in determining if the OCS was another possible tax situs.

**10.** Edward Behne's testimony established the following: (1) GCAD allowed the helicopters

*dep. Sch. Dist.*, 922 S.W.2d 931, 940–41 (Tex.1996) (statute established a method for determining the value of property for tax purposes and was not an unconstitutional exemption); *accord Hardin v. Central Am. Life Ins. Co.*, 374 S.W.2d 881, 882–84 (Tex.1964); *Republic Ins. Co. v. Highland Park Indep. Sch. Dist.*, 129 Tex. 55, 102 S.W.2d 184, 193 (1937); *Tex–Air Helicopters, Inc. v. Appraisal Review Bd. of Galveston County*, 940 S.W.2d 299, 303 (Tex.App.—Houston [14th Dist.] 1997) (§ 21.05 allocation is a method for determining the value of property for tax purposes, not an unconstitutional exemption), *aff'd*, 970 S.W.2d 530, 533 (Tex.1998) ("The allocation under Section 21.05 is not an unauthorized exemption but an attempt to comply with United States constitutional mandates."); *First Aircraft Leasing, Ltd. v. Bexar Appraisal Dist.*, 48 S.W.3d 218, 224 (Tex.App.—San Antonio 2001, pet. denied) ("Read as a whole, Section 21.05 does not provide for an exemption. Instead, subsections (a) and (b) provide the method for allocating to Texas the portion of a commercial aircraft's fair market value that fairly reflects its use in Texas."). Section 21.05 is a valid legislative act under the clause contained in Article VIII, § 1, which states that property shall be taxed "in proportion to its value, which shall be ascertained as may be provided by law." TEX. CONST. art. VIII, § 1(b); *Hardin*, 374 S.W.2d at 884.

The Texas Supreme Court has recently spoken on this issue regarding another section of the Texas Tax Code. In *Enron Corp.*, the supreme court held that a stat-ute allowing owners to elect either January 1 of the tax year or September 1 of the previous tax year as the valuation date for taxation of their inventory was a method for determining the value of property for tax purposes, not an exemption under the null-and-void clause. *Enron Corp.*, 922 S.W.2d at 940–41. The supreme court held that this statute was not an exemption from taxation even though this statute, as applied to Enron, resulted in the non-taxation of three billion cubic feet of natural gas that Enron acquired between the previous September 1 and January 1 of the tax year in question and the loss of $15,000,000 in tax revenue as a result. *Id.* at 933, 940–41. In holding that this statute was constitutional and not a law "exempting property from taxation" under the null-and-void clause, the supreme court noted that "[t]he natural gas inventories at issue here [were] not deleted from the tax rolls entirely . . . ." *Id.* at 941. Likewise, § 21.05 does not exempt commercial aircraft from taxation; rather it provides a method for determining the taxable value of commercial aircraft which takes into account the aircraft's use in Texas. In an attempt to comply with the United States Constitution, only the aircraft's use in Texas is taxed. *See* § 21.05.

Likewise, in *Hardin*, the Texas Supreme Court held that a statute allowing insurance companies to deduct the amount of their reserves from the valuation of their personal property was a method for determining the value of property, not an unconstitutional exemption. The court reached this decision even though the de-

---

in question a § 21.05 allocation in tax year 1997; and (2) the Notice of Appraised Value that Tex–Air received from GCAD for 1997 referred to the portion of value allocated to Texas under § 21.05 as "PERSONAL PROPERTY VALUE" and "TOTAL APPRAISED VALUE." This Notice of Appraised Value stated that no exemptions had been granted as to this property and that the "TAXABLE VALUE ESTIMATED (AFTER EXEMPTIONS)" was the same as the "PERSONAL PROPERTY VALUE" and "TOTAL APPRAISED VALUE." While this evidence does not prevent GCAD from asserting the arguments that it makes as to tax years 1994 and 1995, it is interesting to note that GCAD's own document for 1997 indicated that a § 21.05 allocation is not an exemption.

duction resulted in a valuation of zero for the personal property of the taxpayer in question. *See Hardin*, 374 S.W.2d at 882–84.

In its opinion in the First Appeal, the supreme court expressly stated that it would not determine whether the Legislature's power to determine methods of valuation *alone* would make § 21.05 constitutional in the face of a challenge under Article VIII. *Tex–Air Helicopters, Inc.*, 970 S.W.2d at 533. While the Texas Supreme Court did not use the method-of-valuation analysis in affirming our judgment in the First Appeal, the court did hold that § 21.05 was not an unconstitutional exemption because it was an attempt by the Legislature to comply with the United States Constitution. *Id.* at 535. Further, we find nothing in the supreme court's opinion in the First Appeal that disapproves of or limits the authority of the opinions in *Enron Corp., Hardin,* and *Republic Ins. Co.* or of our opinion in the First Appeal. Therefore, we hold that GCAD did not establish that § 21.05 is a statute exempting property from taxation in violation of the null-and-void clause. This statute establishes a method of valuation rather than an exemption from taxation. *See Enron Corp.*, 922 S.W.2d at 940–41; *Tex–Air Helicopters, Inc.*, 940 S.W.2d at 303, *aff'd*, 970 S.W.2d at 535; *First Aircraft Leasing, Ltd.*, 48 S.W.3d at 224. For the foregoing reasons, we overrule GCAD's first cross-issue and hold that, as applied in this case, § 21.05 is not an unconstitutional tax exemption under Article VIII.[11]

**4. Was § 21.05(b), as applied, improper under § 21.05 and arbitrary and capricious in violation of Article VIII of the Texas Constitution?**

■ In its second cross-issue, GCAD asserts that, under § 21.05, the trial court erred in applying the § 21.05(b) allocation formula to this case. GCAD also argues that the allocation formula in § 21.05(b) is arbitrary and capricious in violation of Article VIII. We disagree with both contentions.

Under § 21.05(a), GCAD had to allocate the portion of the fair market value of each helicopter "that fairly reflects its use in this state." Tex. Tax Code § 21.05(a). Under § 21.05(b), this portion of the helicopters' value "is presumed to be the fair market value of the aircraft multiplied by a fraction, the numerator of which is the product of 1.5 and the number of revenue departures by the aircraft from Texas during the year preceding the tax year, and the denominator of which is the greater of (1) 8,760, or (2) the numerator." *Id.* § 21.05(b). The interpretation and application of § 21.05(b) appears to be an issue of first impression. Under the unambiguous language of § 21.05, we hold that, for the commercial aircraft to which it applies, § 21.05(a) establishes that property taxes on these aircraft must be based on the portion of their fair market value that fairly reflects their use in Texas. *Id.* § 21.05(a). This is the statutory method for establishing the value of these aircraft for property-tax purposes.

■ The unambiguous language of § 21.05(b) establishes a rebuttable presumption that the formula contained in that section represents the portion of the fair market value of the aircraft that fairly reflects the aircraft's use in Texas. *See id.* § 21.05(b). Under § 21.05, there is a presumption that the § 21.05(b) formula equals the taxable value of the aircraft under the legal standard in § 21.05(a). In

---

**11.** The Texas Supreme Court has already held that § 21.05 is not an unconstitutional tax exemption on its face. *Tex–Air Helicopters, Inc.*, 970 S.W.2d at 534.

a dispute over the amount that should be allocated under § 21.05(a), this presumption stands unless a party comes forward with evidence to rebut the presumption. GCAD had the burden of presenting evidence that would support a finding that the § 21.05(b) formula does not fairly reflect the use of Tex–Air's helicopters in Texas. *See In the Interest of S.D.S.*, 648 S.W.2d 351, 352–53 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.) (party opposing presumption must introduce sufficient evidence to support a finding of the nonexistence of the presumed fact). As we outline below, GCAD did not meet this burden.

GCAD went to trial on the amount of the allocation to be made under § 21.05; however, GCAD did not introduce sufficient evidence to rebut the § 21.05(b) presumption. In one of its trial briefs, GCAD asked the district court to consider two suggested formulas as alternatives to the formula in § 21.05(b). GCAD stated that the § 21.05(b) formula "seems questionable" and that it "does not rationally relate to the stated goal." GCAD asserted that "blindly" applying the formula in § 21.05(b) would be "wrong" and that its alternative formulas would be "more equitable." Although GCAD stated that it expected the evidence at trial to show that at least one of the helicopters was never in Louisiana, this brief did not state what GCAD expected the evidence to show regarding either (1) the allocations for each helicopter under the § 21.05(b) formula or (2) the amount of the helicopters' use in Texas.

At trial, GCAD did not introduce evidence of the portion of the helicopters' use that occurred inside of Texas—as opposed to in Louisiana, or over the OCS, or on OCS platforms. GCAD also failed to introduce any evidence concerning the amount of the allocations that would be yielded by any formula proposed by GCAD as an alternative to the § 21.05(b) formula. GCAD failed to introduce sufficient evidence at trial to support a finding that the § 21.05(b) formula does not represent the portion of the fair market value of the helicopters in question that fairly reflects their use in Texas.

On appeal, GCAD ignores its burden to rebut the § 21.05(b) presumption at trial; rather, GCAD argues that this presumption only means that the trial court was free to use other formulas if the § 21.05(b) formula does not serve the statute's purpose. However, the law requires that GCAD rebut this presumption with evidence at trial. *See Smith v. Smith*, 22 S.W.3d 140, 147 (Tex.App.—Houston [14th Dist.] 2000, no pet.); *Amador v. Berrospe*, 961 S.W.2d 205, 208 (Tex.App.—Houston [1st Dist.] 1996, writ denied); *In the Interest of S.D.S.*, 648 S.W.2d at 352–53. GCAD states that it provided the trial court with two alternative formulas in its post-trial brief; however it does not point us to any evidence that GCAD introduced on this issue at trial, and we find none in the record.[12] Thus, we conclude that GCAD did not rebut the § 21.05(b) pre-

**12.** GCAD argued in its post-trial brief that the formula in § 21.05(b) did not produce a fair reflection of the helicopters' use in Texas, and GCAD gave the court the allocation figures that would be produced for the helicopters under GCAD's two alternative formulas. Even in this brief, GCAD did not analyze the application of the § 21.05(b) formula to these helicopters compared to their use in Texas.

Further, GCAD filed its post-trial brief twelve days after the close of evidence at the end of trial. If GCAD wanted to rebut the § 21.05(b) presumption, it should have introduced evidence at trial that would support a finding that the § 21.05(b) formula does not represent the portion of the fair market value that fairly reflects the helicopters' use in Texas.

sumption by introducing evidence that would support a finding that the § 21.05(b) formula does not represent the portion of the fair market value that fairly reflects the helicopters' use in Texas. *See Smith,* 22 S.W.3d at 147; *Amador,* 961 S.W.2d at 208; *In the Interest of S.D.S.,* 648 S.W.2d at 352–53. As a result, the trial court correctly used the § 21.05(b) formula to calculate the § 21.05(a) allocations.[13]

 GCAD also asserts that the formula in § 21.05(b), as applied in this case, is arbitrary and capricious in violation of Article VIII. *See Enron Corp.,* 922 S.W.2d at 935–36. However, if GCAD had rebutted the § 21.05(b) presumption and proved up alternative allocations that fairly reflected the use of these helicopters in Texas, then the trial court would have made a determination as to the portion of the fair market value of these helicopters that fairly reflects their use in Texas. GCAD does not assert that the § 21.05(a) legal standard is arbitrary and capricious. If possible, we must construe § 21.05 to render it constitutional. *Cash America Int'l, Inc.,* 35 S.W.3d at 18 n. 4. GCAD had the burden of proving at trial that, as applied to this case, § 21.05(b) is unconstitutionally arbitrary and capricious. *Edgewood Indep. Sch. Dist,* 917 S.W.2d at 725. GCAD did not avail itself of its opportunity to rebut the presumption that the formula in § 21.05(b) represents the portion of the fair market value of the helicopters that fairly reflects their use in Texas—a legal standard that GCAD does not challenge under this cross-issue. Under these circumstances, we conclude that GCAD did not prove that the application of the § 21.05(b) formula to this case was so arbitrary and capricious that it violated Article VIII. *See Enron Corp.,* 922 S.W.2d at 935–36. The trial court correctly rejected GCAD's constitutional challenges to § 21.05. We overrule GCAD's second cross-issue.

**5. Should an Allocation Have Been Made for Helicopter N6037J # 5438 for 1995?**

██ In its second issue, Tex–Air asserts that the trial court should have made an allocation for Helicopter N6037J # 5438 using the § 21.05(b) formula. We agree. As discussed above, GCAD did not rebut the § 21.05(b) presumption. Therefore, the trial court should have deemed the § 21.05(b) formula to be the portion of the fair market value of this helicopter that fairly reflects its use in Texas. *See* Tex. Tax Code § 21.05; *Smith,* 22 S.W.3d at 147; *Amador,* 961 S.W.2d at 208; *In the Interest of S.D.S.,* 648 S.W.2d at 352–53. On appeal, GCAD does not challenge the trial court's finding that Helicopter N6037J # 5438 had 237 revenue departures from Texas for 1994, which is used in the § 21.05(b) formula for the 1995 tax year. The parties do not dispute that the fair market value of this helicopter for the 1995 tax year was $676,540. As a matter of law, using the § 21.05(b) formula, the 1995 allocated value for Helicopter N6037J # 5438 was $27,455.47.[14] Therefore, we sustain Tex–Air's second issue and hold that the 1995 taxable value for Helicopter

---

**13.** It should also be noted that the evidence at trial showed that these helicopters were mostly used to fly personnel and materials over the OCS and to land on OCS platforms. As stated above, the OCS and its platforms are beyond the jurisdiction of Texas and are not subject to Texas's direct taxation laws. OCSLA, 43 U.S.C. §§ 1301–1356a. Therefore, the evidence showed that, for the most part, Tex–Air used these helicopters outside Texas.

**14.** This amount equals $676,540 multiplied by

$$\frac{1.5 \times 237}{8760}.$$

*See* Tex. Tax Code § 21.05(b).

N6037J # 5438 should have been $27,455.47.

## Conclusion

The trial court did not abuse its discretion by denying Tex–Air leave to amend its petition. The trial court correctly rejected Tex–Air's equal-protection challenge to § 42.29. As to its first constitutional challenge, GCAD did not carry its burden of proving that § 21.05 was an unconstitutional tax exemption in violation of the null-and-void clause. The evidence was sufficient to support an implied finding that GCAD did not prove Texas was the only jurisdiction that could have taxed these helicopters. Furthermore, GCAD did not establish that § 21.05 is a statute exempting property from taxation in violation of Article VIII, as opposed to a method for valuing property. As to its second constitutional challenge, GCAD did not rebut the presumption that the § 21.05(b) formula represents the portion of the fair market value of the helicopters that fairly reflects their use in Texas. GCAD also did not prove at trial that the application of the § 21.05(b) formula to this case was so arbitrary and capricious that it violated Article VIII. The trial court erred by not allocating as to Helicopter N6037J # 5438 for the 1995 tax year. As a matter of law, the allocated value for this helicopter for 1995 should have been $27,455.47.

Therefore, we overrule Tex–Air's first and third issues as well as GCAD's first and second cross-issues. We sustain Tex–Air's second issue. We modify the trial court's judgment to change the 1995 allocated value for Helicopter N6037J # 5438 to $27,455.47, and, as modified, we affirm the trial court's judgment.