Affirmed and Memorandum Opinion filed February 10, 2004









Affirmed and Memorandum Opinion filed February 10,
2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00226-CV

____________

 

JOSEPH JAMES SAPORITO, Appellant

 

V.

 

CINCINNATI INCORPORATED, Appellee

 



 

On Appeal from the 157th
District Court

Harris County, Texas

Trial Court Cause No. 00-63176

 



 

M E M O R A N D U M  
O P I N I O N

In this products liability and negligence case, appellant
Joseph James Saporito appeals from a take-nothing
summary judgment in favor of appellee, Cincinnati
Incorporated.  Concluding the statute of
repose in the former version of Texas Civil Practice and Remedies Code section
16.012(b) bars Saporito=s causes of action, we affirm.[1]








FACTUAL AND PROCEDURAL BACKGROUND

On December 16, 1998, Saporito
injured his hand while working at Lute=s and Company.  At the time, Saporito
was bending a piece of metal on a press brake machine while the machine was in
automatic continuous cycle mode, and the piece of metal came down on his hand,
severing the tendons.  Cincinnati had
manufactured and sold the press brake machine in 1953.

In 2000, Saporito sued Lute=s and Company, its owner, and
Cincinnati.  Saporito
alleged Cincinnati was negligent in the design and manufacture of the machine
by failing to prohibit continuous operation and by failing to warn adequately
against continuous operation.  Saporito also alleged the following products liability
claims:  breach of express and implied
warranty and manufacturing defect and design, including defective warnings.








Cincinnati answered and filed a motion for summary
judgment.  Cincinnati primarily argued
Texas Civil Practice and Remedies Code section 16.012 barred Saporito=s claims because its summary
judgment proof established the press brake was manufactured and sold in 1953,
and no one for Cincinnati ever expressly represented to any one the press brake
had a useful life longer than fifteen years. 
Cincinnati also argued there was no evidence it had manufactured or sold
the press brake fifteen years or fewer before Saporito=s cause of action accrued or
had ever represented the press brake had useful life longer than fifteen
years.  In support, Cincinnati presented
the affidavit of Cincinnati=s Product Safety Manager, Ralph
W. Wellington.  In response to the
summary judgment motion, Saporito initially argued
the statute of repose did not apply to his claim, and, even if it did, he had
asserted Acontinuing negligence . . . for
failure to convey recall information@ about the automatic feature on
the machine.[2]

Saporito subsequently filed a first
amended petition and a second response to the motion for summary judgment.  In his first amended petition, he alleged the
following negligence claims: (1) failure to design the press brake properly;
(2) failure to warn against use of the automatic feature; (3) failure to
retrofit the press brake to comply with OSHA and ANSI requirements after 1970
(negligence per se); (4) failure to comply with an assumed duty to inform
end-users against the use of the automatic feature, which duty was assumed as
late as 1996 when new operating manuals were sent to the end-users of the press
brake; and (5) failure to inspect properly for safety when the latest
inspection was in the 1980=s.  Saporito reiterated
the products liability claims set forth in his original petition and added a
claim the press brake was unreasonably dangerous as a matter of law based on
OSHA and ANSI violations.[3]








In his second response to the motion for summary judgment, Saporito argued Wellington=s testimony raised a fact issue
regarding whether the press brake was expressly warranted to last a lifetime
because Wellington did not doubt that a sales tactic was to inform potential
customers the first press brake made by Cincinnati was still in use.  Saporito also
argued the statute of repose did not bar his Anon-products liability@ claims, e.g., Aactive negligence@ or Aassumed duties concerning a
product.@  In this context, he reasserted  negligent performance of an assumed duty to
inform and an assumed duty to inspect properly. 
In support of the duty to inform, he presented (1) a series of
information or cover letters, the latest of which was dated 1980, (2)
Wellington=s deposition testimony
indicating an undated version of the letter was included in operating manuals
sold after 1971, and (3) a 1996 shipping order for a manual for the press
brake.  In support of the duty to
inspect, he presented Wellington=s testimony Cincinnati personnel
last saw the press brake in 1983, fifteen years before the accident, and
service records indicating the same.

Cincinnati next filed a summary judgment motion addressing Saporito=s added negligence claims.  Cincinnati argued the statute of repose
barred these claims as well because, in effect, they constituted a Aproducts liability action,@ as defined in then Texas Civil
Practice and Remedies Code section 82.001.[4]  Cincinnati also argued Texas law generally
does not recognize a post-sale duty to warn based on an inspection.  For such a duty to arise, the manufacturer
must retain some type of control over the product.








Saporito responded, limiting his
allegations of negligence to (1) the post-sale failure to warn that the
automatic feature violated OHSA regulations, was otherwise unsafe, and should
be removed, and (2) the post-sale failure to inspect properly.  Saporito again
relied on the lack of information in the information/cover letters to support
his negligence claim based on failure to warn. 
To support his negligence claim based on failure to inspect properly, Saporito relied on the previously cited inspections ending
in 1983 and on testimony from Lutes regarding a 1999 inspection.  He argued (1) Texas Civil Practice and Remedies
Code section 16.012 does not bar post-sale causes of action, (2) Texas
recognizes post-sale duties, if they are assumed, and (3) the duty to inspect
in Texas does not rest on regaining control of the product.

The trial court granted Cincinnati=s motion for summary judgment,
severed Saporito=s action against Lute=s and Company and its owner,
and ordered Saporito take nothing from Cincinnati.

DISCUSSION

Introduction and Standard of Review

In a single issue, Saporito
contends the trial court erred in granting Cincinnati=s summary judgment motion.  He argues (1) Texas Civil Practice and
Remedies Code section 16.012 does not bar post-sale causes of action, (2) Saporito stated a viable cause of action against Cincinnati
for breach of a post-sale duty to warn or inspect, and (3) an assumed duty to
inspect is not based on Cincinnati=s regaining significant
control.

The purpose of summary judgment is to eliminate patently
unmeritorious claims or untenable defenses; it is not intended to deprive
litigants of their right to a full hearing on the merits of any real issue of
fact.  Gulbenkian
v. Penn, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).  The movant for
summary judgment has the burden to show there is no genuine issue of material
fact and it is entitled to judgment as a matter of law.  Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548 (Tex. 1985).  When
deciding whether there is a disputed material fact issue precluding summary
judgment, the appellate court must take as true all evidence favorable to the
non‑movant. 
Id. at 548B49.  The reviewing court must indulge every
reasonable inference in favor of the non‑movant
and resolve any doubts in its favor.  Id.
at 549.








A defendant moving for a traditional summary judgment
assumes the burden of showing as a matter of law the plaintiff has no cause of
action against it.  See Levesque v. Wilkens, 57 S.W.3d 499, 503 (Tex. App.CHouston [14th Dist.] 2001, no
pet.).  Traditional summary judgment for
a defendant is proper only when the defendant negates at least one element of
each of the plaintiff=s theories of recovery, or
pleads and conclusively establishes each element of an affirmative
defense.  Science Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997). 


Additionally, after sufficient time for discovery has passed,
a party may file a Ano evidence@ motion for summary judgment if there is no evidence of one
or more essential elements of a claim or defense on which an adverse party
would have the burden of proof at trial. 
See Tex. R. Civ. P.  166a(i). As with the traditional summary judgment, in reviewing
a Ano evidence@ summary judgment, we review the
evidence in the light most favorable to the nonmovant
and disregard all evidence and inferences to the contrary.  Coastal Conduit & Ditching, Inc. v. Noram Energy Corp., 29 S.W.3d 282, 284 (Tex. App.CHouston [14th Dist.] 2000, no
pet.).  We sustain a no evidence summary
judgment if (1) there is a complete absence of proof of a vital fact; (2) rules
of law or evidence bar the court from giving weight to the only evidence
offered to prove a vital fact; (3) the evidence offered to prove a vital fact
is no more than a scintilla; or (4) the evidence conclusively establishes the
opposite of a vital fact.  Id.

Because the propriety of summary judgment is a question of
law, we review the trial court=s decision de novo.  Brown v. Blum, 9 S.W.3d 840, 844B45 (Tex. App.CHouston [14th Dist.] 1999, pet.
dism=d w.o.j.).  Similarly, matters of statutory construction
are generally legal questions, subject to de novo review.  See State ex. rel.
Dep=t of Highways & Pub. Transp. v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002).








  If, as here, the
trial court grants a motion for summary judgment without stating the grounds on
which it relied, we must affirm the summary judgment if any ground argued in
the motion was sufficient.  Star‑Telegram,
Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995); Blan
v. Ali, 7 S.W.3d 741, 747B48 (Tex. App.CHouston [14th Dist.] 1999, no pet.).  Because we conclude section 16.012 bars Saporito=s post-sale causes of action,
we affirm the summary judgment on that ground and do not address his remaining
contentions.[5]

The Statute of Repose in Product Liability Actions

Absent an exception not at issue on appeal, Aa claimant must commence a
products liability action against a manufacturer or seller of manufacturing
equipment before the end of 15 years after the date of the sale of the
equipment by the defendant.@  Act of February 24, 1993, 73d Leg., R.S., ch. 5, ' 2, sec. 16.012(b), 1993 Tex.
Gen. Laws 13, 15 (amended  2003, current
version at Tex. Civ.
Prac. & Rem. Code Ann.
' 16.012(b) (Vernon Supp. 2004)).[6]  Saporito does not
dispute the press brake is Amanufacturing equipment@ as covered by former Texas Civil
Practice and Procedures Code section 16.012. 
See id. sec. 16.012(a)(2). 
(defining
Amanufacturing equipment@) (deleted 2003).  There is also no dispute Cincinnati
manufactured and sold the press brake in 1953, or that Saporito
filed the present lawsuit in 2000.

 Saporito,
however, contends his claims for negligent failure to warn and to inspect do
not constitute products liability actions. 
Under former section 82.001(a), Aproducts liability action@ was broadly defined to mean








any
action against a manufacturer or seller for recovery of damages arising out of
personal injury, death, or property damage allegedly caused by a defective
product whether the action is based in strict tort liability, strict products
liability, negligence, misrepresentation, breach of express or implied
warranty, or any other theory or combination of theories.

 

Act of February 24, 1993, 73d Leg., R.S., ch. 5, ' 1, sec. 82.001(2), 1993 Tex.
Gen. Laws 13, 13 (amended and renumbered 2003, current version at Tex. Civ. Prac. & Rem. Code Ann.
' 16.012(a)(2) (Vernon Supp.
2004)) (emphasis added).  We must
therefore determine whether Saporito=s claims fall within this
statutory definition.

A court=s objective in construing a
statute is to determine and give effect to the legislature=s intent.  Tex‑Air Helicopters, Inc. v.
Galveston County Appraisal Review Bd., 76 S.W.3d 575, 581 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied).  We presume the legislature
intended the plain meaning of the words it used.  Id. 
If possible, we must ascertain the legislature=s intent from the language of
the statute and not resort to extraneous matters for an intent not stated in
the statute.  Id.  When interpreting a statute, we consider the
entire act, its nature and object, and the consequence that would follow from
each construction.  Id.  We must reject any statutory interpretation
that defeats the legislative purpose.  Id.

In interpreting Texas Civil Practice and Remedies Code
sections 16.012 and 82.001, we may look to the Code Construction Act for assistance.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 1.002 (Vernon 2002) (stating
Code Construction Act applies to construction of each provision of the Civil
Practice and Remedies Code, except as otherwise expressly provided); Tex. Gov=t Code Ann. ' 311.002 (Vernon 1998) (stating
chapter applies to each code enacted by 60th or subsequent legislature as part
of state=s continuing statutory revision
program and applies to amendment of such codes).  Under the Code Construction Act, AWords and phrases shall be read
in context and construed according to the rules of grammar and common usage.@  Tex.
Gov=t Code
Ann. ' 311.011(a) (Vernon 1998).








As set forth above, Aproducts liability action@ is Aany action@ against a manufacturer or
seller in which the plaintiff seeks to recover damages for personal injury,
death, or property damage caused by a defective product.  Act of February 24, 1993, 73d Leg., R.S., ch. 5, ' 1, sec. 82.001(2), 1993 Tex.
Gen. Laws 13, 13 (amended and renumbered 2003, current version at Tex. Civ. Prac. & Rem. Code Ann.
' 16.012(a)(2) (Vernon Supp.
2004)).  By common usage, Aany@ means Aone or some indiscriminately of
whatever kind.@  Webster=s
Third New International Dictionary 97 (1993).  This
expansive meaning is reinforced by the phrase indicating such an action is
considered a products liability action regardless of whether the action is
based on one of the specifically enumerated theories or Aany other theory or combination
of theories.@  Act of February 24, 1993, 73d Leg., R.S., ch. 5, ' 1, sec. 82.001(2), 1993 Tex.
Gen. Laws 13, 13 (amended and renumbered 2003, current version at Tex. Civ. Prac. & Rem. Code Ann.
' 16.012(a)(2) (Vernon Supp.
2004)).

Given the expansive definition in section 82.001(2), we
conclude Saporito=s claims against Cincinnati
arising out of his personal injury constitute a Aproducts liability action@ subject to the fifteen year
statute of repose in section 16.012(b).  Because it is undisputed the press brake was
manufactured and sold in 1953 and Saporito did not
commence his lawsuit until 2000, we conclude summary judgment was proper based
on section 16.012(b).

We overrule Saporito=s single issue.

We affirm the judgment of the
trial court.

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

Judgment
rendered and Memorandum Opinion filed February 10, 20043.

Panel
consists of Chief Justice Hedges and Justices Anderson and Seymore.











[1]  At the time of
Saporito=s injury
and the filing of his law suit, section 16.012 provided in relevant part:

 

(b) Except as provided by Subsection (c), a claimant
must commence a products liability action against a manufacturer or seller of
manufacturing equipment before the end of 15 years after the date of the sale
of the equipment by the defendant.

 

(c) If a manufacturer or seller expressly represents
that the manufacturing equipment has a useful safe life of longer than 15
years, a claimant must commence a products liability action against that
manufacturer or seller of the equipment before the end of the number of years
represented after the date of the sale of the equipment by that seller.

 

Act of February 24, 1993, 73d Leg., R.S., ch. 5, ' 2, sec. 16.012(b), (c), 1993 Tex. Gen. Laws 13, 14B15 (amended 
2003, current version at Tex. Civ. Prac. & Rem. Code Ann. '
16.012(b), (c) (Vernon Supp. 2004)).





[2]  The trial
court heard and orally granted Cincinnati=s
initial motion for summary judgment on December 28, 2001.  After Cincinnati filed its motion for summary
judgment, Saporito amended his petition to add
additional Anegligence@
claims.  As discussed below, Cincinnati
addressed these claims in a subsequent motion for summary judgment.





[3]  Presumably Saporito was referring to the Occupational Safety and
Health Administration and the American National Standards Institute.





[4]  For purposes
of former section 16.012, Aproducts liability action@ had the meaning assigned in what was then Texas Civil
Practice and Remedies Code Section 82.001. 
Act of February 24, 1993, 73d Leg., R.S., ch.
5, ' 2, sec. 16.012(a)(1), 1993 Tex. Gen. Laws 13, 14
(amended  2003, current version at Tex. Civ. Prac. & Rem. Code Ann.
' 16.012(a)(2) (Vernon Supp. 2004)).  At the time of Saporito=s injury and the filing of his law suit, section
82.001(2)  provided:

 

AProducts liability action@ means any action against a manufacturer or seller for
recovery of damages arising out of personal injury, death, or property damage
allegedly caused by a defective product whether the action is based in strict
tort liability, strict products liability, negligence, misrepresentation,
breach of express or implied warranty, or any other theory or combination of
theories.

 

Act of February 24, 1993, 73d Leg., R.S., ch. 5, ' 1, sec. 82.001(2), 1993 Tex. Gen. Laws 13, 13
(amended and renumbered 2003, current version at Tex. Civ. Prac.
& Rem. Code Ann. ' 16.012(a)(2) (Vernon Supp. 2004)).





[5]  Saporito=s allegations of post-sale duties to inform/warn and
to inspect rest on the premise Cincinnati assumed those duties.  In Torrington Co. v. Stutzman,
the supreme court stated:

 

We have never held that a person may be liable on an
undertaking theory without establishing reliance or increased risk of harm, and
we decline to do so now.  To the extent [Bell
Helicopter Co. v. Bradshaw, 594 S.W.2d 519 (Tex. Civ.
App.CCorpus Christi 1979, writ ref=d n.r.e.)] recognized
liability under an undertaking theory without proof of reliance or increased
risk of harm, we disapprove it.

 

46 S.W.3d 829, 838 n.7 (Tex. 2000).  Bell has also been criticized for
imposing an overly broad duty on manufacturers. 
See Romero v. Int=l Harvester Co.,
979 F.2d 1444, 1451 n.6 (10th Cir. 1992).





[6]  Subsection (c)
provided an exception if the manufacturer or seller expressly represents the
manufacturing equipment has a useful safe life longer than fifteen years.  Act of February 24, 1993, 73d Leg., R.S., ch. 5, ' 2, sec. 16.012(c), 1993 Tex. Gen. Laws 13, 15
(amended  2003, current version at Tex. Civ. Prac. & Rem. Code Ann.
' 16.012(c) (Vernon Supp. 2004)).  Although in the trial court Saporito argued  the
summary judgment proof raised a fact issue in relation to this exception, he
has not renewed his argument in this court.