Affirmed and Opinion filed November 13, 2003









Affirmed
and Opinion filed November 13, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00361-CV

____________

 

THE CITY OF MISSOURI CITY, TEXAS;
ALLEN OWEN, IN HIS CAPACITY AS MAYOR OF THE CITY OF MISSOURI CITY, TEXAS; AND
JERRY WYATT, BOB BURTON, BUDDY R. JIMERSON, BRETT KOLAJA, EUNICE H. REITER, AND
DON SMITH, IN THEIR CAPACITIES AS MEMBERS OF THE CITY OF MISSOURI CITY, TEXAS,
COUNCIL,
Appellants

 

V.

 

THE STATE OF TEXAS ON RELATION OF THE
CITY OF ALVIN, TEXAS; AND THE CITY OF ALVIN, TEXAS, Appellees

 



 

On Appeal from the 239th
District Court

Brazoria County, Texas

Trial Court Cause No. 21274*JG02

 



 

O
P I N I O N








This
is an appeal from a summary judgment voiding an annexation ordinance passed by
the City of Missouri City (AMissouri City@), and awarding attorney=s fees to the City of Alvin  (AAlvin@).[1]  We affirm.

FACTUAL
AND PROCEDURAL BACKGROUND

In
1960, Alvin passed an ordinance purporting to annex a 100-foot-wide strip of
land approximately 137 miles long.  The
strip extends east from Alvin=s east city limit line, runs
north along the Brazoria/Galveston County line to a point northeast of Manvel,
circles south around to the west side of Manvel, then extends west to the
Brazos River, and follows the Brazos River to a point south of the Derrington
State Farm.  The strip then extends to a
point east of Texas Highway 288, from which it runs southeast, following Austin
Bayou and various commissioner=s precinct lines.  The strip next jogs back to the southwest and
eventually  follows
the meanders of Bastrop Bayou to Bastrop Bay, continuing to the AGulf of Mexico,@ from which it proceeds
northeast to a point on the Brazoria/Galveston County line, and runs back along
this line to the point east of Alvin=s city limits, referred to
above.[2]

Forty-two
years later, in September 2002, Missouri City approved an ordinance purporting
to annex an L-shaped strip of land 1000 feet wide and extending into the
municipal territory and extraterritorial jurisdiction (AETJ@) Alvin claimed by virtue of
its 1960 ordinance.  The L-shaped strip
is attached to a strip of Missouri City territory that is twenty-five feet
wide.













The
State, on behalf of Alvin, filed a quo warranto action against the City of
Missouri City, and against its mayor and council members in their official
capacities.  The State alleged Missouri
City illegally extended its incorporated area into Alvin=s municipal territory and
further violated Texas Local Government Code section 42.041 by extending its
territory into Alvin=s ETJ without Alvin=s consent.[3]  The State also alleged Missouri City violated
section 43.0545 by annexing land located within Missouri City=s extraterratorial jurisdiction
only by virtue of the fact the land was contiguous to municipal territory less
than 1000 feet wide at its narrowest point.[4]  The State alleged discovery was to be
conducted under Level Two.[5]








Missouri
City answered, alleging Alvin=s 1960 annexation was void
because of defects in the legal description, and therefore Alvin had no
extraterritorial jurisdiction over land surrounding the 1960 annexation.  Missouri City also asserted a general denial
and defenses of waiver and estoppel.








In
November 2002, Alvin filed a petition in intervention naming only the City of
Missouri City as a defendant and requesting declaratory relief.  In addition to the allegations set forth by
the State, Alvin responded to Missouri City=s allegation the1960 annexation
was void.  Alvin asserted (1) it had
provided various municipal services to the annexed area, thereby creating an
irrebutable and uncontestable presumption of validity under Local Government
Code section 41.003;[6]
(2) the annexation was validly effected in 1960, reaffirmed when Alvin was
incorporated as a home rule city in 1963, and both the annexation and
incorporation have been validated by eight subsequent validation statutes; and
(3) statutes of limitation or laches bar Missouri City=s challenge.[7]  Alvin included a prayer for attorney=s fees.








Missouri
City responded to Alvin=s intervention with a general
denial.  It also alleged a defect of
parties, asserting that quo warranto was the only means of challenging the
annexation, and Alvin could not maintain the action on its own.

In
January 2003, appellees filed a motion for summary judgment.  They alleged Missouri City=s attempted annexation violated
Texas law in three respects: (1) Missouri City could not lawfully annex into
Alvin=s territorial limits; (2)
Missouri City could not lawfully annex into Alvin=s ETJ; and (3) Missouri City
could not annex from a strip less than 1000 feet wide at its narrowest point.

Missouri
City immediately moved for a continuance and requested a docket control
order.  It claimed it had outstanding
discovery requests due in February, still needed to conduct two oral
depositions, and had not had adequate time to review the production responses
or conduct adequate discovery.  The
motion was neither verified nor accompanied by a supporting affidavit.

In
its subsequent response to the motion for summary judgment, Missouri City
contended that the following four sets of material fact issues precluded
summary judgment, and more might be developed with additional discovery: (1)
those related to deficiencies in the legal description of Alvin=s 1960 annexation; (2) those
related to Alvin=s failure to include the
annexation on maps prepared since 1960; (3) those related to the annexation=s having controlling adjacency
with Manvel, rather than Alvin; and (4) those related to the reasons for
Missouri City=s 2002 annexation.  Missouri City also alleged Alvin could not
rely on the validating statutes or on the Local Government Code sections it
cited.  Finally, Missouri City alleged
the motion for summary judgment was premature because sufficient time for
discovery had not elapsed.  Attached to
Missouri City=s response was the affidavit of
Mark Watler, one of Missouri City=s attorneys of record.  Watler stated his December 10, 2002 review of
documents Arequired follow-up in certain
respects.@  Watler also referred to outstanding discovery
requests, copies of which were attached to the affidavit.








Appellees
opposed the motion for continuance, arguing in part that the dispositive issues
were questions of law, which required no further discovery.  They argued that granting the motion would
create economic risk for Alvin and Brazoria County.  They also referred to the lack of
verification or affidavit.

Without
stating the grounds, the trial court granted appellees= summary judgment motion and
declared the Missouri City annexation ordinance null and void.  The court further awarded appellees= attorney=s fees in an amount to be
determined by separate order, absent agreement by the parties.  The style of the order does not include the
mayor or council members; the order does not contain a clause purporting to
dispose of all parties and all claims. 
The City of Missouri City filed a notice of appeal, naming only itself
as appellant.

Alvin
and the State then filed a request to quantify attorney=s fees.  In turn, Missouri City filed a motion to
strike Alvin=s intervention, arguing Alvin
could not bring the suit in its own name and its suit was duplicative of the
State=s quo warranto suit.  Missouri City requested the court delete from
its summary judgment order any relief granted to Alvin.  Missouri City separately opposed the request
to quantify attorney=s fees, arguing (1) the award was
not Ajust and equitable,@ (2) the Acosts@ permissible in a quo warranto
action do not include attorney=s fees, (3) an award of fees is
not reasonable because 
the services were Aunnecessarily duplicative,@ and (4) awarding fees to an
elected public official and public employees violates public policy.

Missouri
City also filed an amended original answer in which the mayor and council
members claimed sovereign immunity. 
Finally, the mayor and council members filed a Ano evidence@ summary judgment motion,
alleging the State sought no relief from the individuals and Alvin did not name
the individuals as parties.








The
court entered an order denying the no-evidence summary judgment motion and an
order awarding the following attorney=s fees to Alvin: $35,000 with
remittitur of $5,000 if no appeal were prosecuted and $5,000 if an appeal were
prosecuted, but no petition for review sought.[8]  The trial court subsequently rendered a Afinal judgment@ incorporating the previous
orders (1) granting summary judgment in favor of the State and Alvin, and (2)
awarding attorney=s fees to Alvin.[9]  In the final judgment, the court also stated
the relief granted to the State of Texas against the City of Missouri City is
granted against the mayor and the council members in their official
capacities.  Finally the court stated, AThis is a Final Judgment disposing
of all claims and all parties.@

DISCUSSION

Issue
One: No Final Judgment

In
issue one, Missouri City initially argued this court
had no jurisdiction because the trial court had not rendered a final judgment
disposing of all parties and all claims. 
The same day Missouri City submitted its brief to this court, the trial
court signed the Afinal judgment@ described above, disposing of
all claims and parties.  See Lehmann
v. Har‑Con Corp., 39 S.W.3d 191, 192 (Tex. 2001) (stating, in cases
in which only one final and appealable judgment can be rendered, a judgment
issued without conventional trial is final for purposes of appeal if and only
if it actually disposes of all claims and parties then before the court).  The parties agree this judgment is appealable
and issue one is moot.

Accordingly,
we overrule issue one.

Issue
Two: Premature Grant of Appellees= Motion for Summary Judgment








In
issue two, Missouri City argues the trial court erred in granting summary
judgment before allowing a reasonable time in which to conduct discovery.  The determination to allow Missouri City more
time for discovery was within the trial court=s discretion.  Tenneco Inc. v. Enter. Prods.
Co., 925 S.W.2d 640, 647
(Tex. 1996).  As
discussed below under issues three through six, the trial court had before it
all the relevant information on at least one of the summary judgment grounds
when it granted appellees= summary judgment motion.  Accordingly, we hold Missouri City has not
shown an abuse of discretion.  See id.

We
overrule issue two.

Issues
Three through Six: Error to Grant the Summary Judgment Motion on the Merits

Overview and summary judgment standards.  In issues three through six, Missouri City
challenges the merits of the motion for summary judgment.  In issue three, Missouri City argues the
trial court erred in granting summary judgment because the record established
genuine fact issues about what land was included in Alvin=s 1960 annexation; in issue
four, because the validation statutes cannot validate annexation of land with
no definite boundaries and lacking controlling adjacency with Alvin; in issue
five, because the record contained evidence supporting Missouri City=s defenses of waiver and
estoppel; and in issue six, because Missouri City rebutted the theory its
annexation violated Local Government Code section 43.0545.[10]

In
their motion for summary judgment, appellees set forth three grounds:  (1) Missouri City cannot lawfully annex into
Alvin=s territorial limits; (2)
Missouri City cannot lawfully annex into Alvin=s ETJ; and (3) Missouri City=s annexation from a strip less
than 1000 feet wide at its narrowest point violates section 43.0545.  The first two grounds rested on the validity
of Alvin=s 1960 annexation of the
100-foot-wide strip; the third did not.








In
its response to the motion for summary judgment, Missouri City alleged fact
issues existed in four areas, three of which related only to the first two
grounds:  (1) deficiencies in the legal
description of the 1960 annexation that rendered subsequent validating statutes
inapplicable; (2) Alvin=s alleged Aabandonment@ of the strip, which
purportedly supported Missouri City=s defenses of waiver and
estoppel; and (3) the strip=s controlling adjacency with
Manvel.  Only the fourth area, concerning
the reasons for Missouri City=s 2002 annexation, related to
the third ground for summary judgment, i.e., Missouri City=s violation of Local Government
section 43.0545.[11]  Similarly, on appeal, only issue six relates
to the third ground for summary judgment. 
Because we conclude the third ground was sufficient to support the grant
of summary judgment, we overrule issue six and uphold the summary judgment in
favor of appellees.  Given our resolution
of issue six, we do not address issues three through five.








The
purpose of summary judgment is to eliminate patently unmeritorious claims or
untenable defenses; it is not intended to deprive litigants of their right to a
full hearing on the merits of any real issue of fact.  Gulbenkian v. Penn,
151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).  A plaintiff moving for summary judgment must
conclusively prove all essential elements of its claim.  See MMP, Ltd. v. Jones, 710 S.W.2d 59,
60 (Tex.1986); Geiselman v. Cramer Fin. Group, Inc., 965 S.W.2d 532, 535
(Tex. App.CHouston [14th Dist.] 1997, no
writ).  The movant for summary judgment
has the burden to show there is no genuine issue of material fact and it is
entitled to judgment as a matter of law. 
Nixon v. Mr. Prop. Mgmt.
Co., 690 S.W.2d 546, 548 (Tex. 1985).  When deciding whether there is a disputed
material fact issue precluding summary judgment, the appellate court must take
as true all evidence favorable to the non‑movant.  Id. at 548B49.  The reviewing court must indulge every
reasonable inference in favor of the non‑movant and resolve any doubts in
its favor.  Id.
at 549.

Because
the propriety of summary judgment is a question of law, we review the trial
court=s decision de novo.  Brown v. Blum, 9 S.W.3d 840, 844B45 (Tex. App.CHouston [14th Dist.] 1999, pet.
dism=d w.o.j.).  Similarly, matters of statutory construction
are generally legal questions, subject to de novo review.  See State ex. rel. Dep=t of Highways & Pub. Transp. v. Gonzalez, 82 S.W.3d 322,
327 (Tex. 2002).

  If, as
here, the trial court grants a motion for summary judgment without stating the
grounds on which it relied, we must affirm the summary judgment if any ground
argued in the motion was sufficient.  Star‑Telegram,
Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995); Blan v. Ali, 7 S.W.3d
741, 747B48 (Tex. App.CHouston [14th Dist.] 1999, no pet.).  We turn now to issue six, which addresses the
third ground of appellees= summary judgment motion.

Issue
Six:  Whether Missouri City=s annexation violated Texas
Local Government Code section 
43.0545.  A city may annex
only territory that is within its ETJ, unless it owns the area it seeks to
annex.  Tex.
Loc. Gov=t
Code Ann. '
43.051 (Vernon 1999). 
Missouri City does not claim to own the L-shaped strip of land at
issue.  Missouri City=s own exhibit shows the
L-shaped strip lies within Missouri City=s ETJ solely because the
L-shaped strip touches a strip of Missouri City=s municipal territory which is
only twenty-five feet wide.








Section
43.0545 provides in relevant part:  AA municipality may not annex an area
that is located in the extraterritorial jurisdiction of the municipality only because
the area is contiguous to municipal territory that is less than 1,000 feet in
width at its narrowest point.@ 
Tex. Loc. Gov=t Code Ann. ' 43.0545(a) (Vernon Supp. 2003)
(emphasis added).  Missouri City argues the italicized phrase
modifies the verb Aannex.@  It directs this court=s attention to the affidavit of
its planning director, who stated Missouri City did not annex the land only
because it was Acontiguous to municipal
territory that is less than 1,000 feet in width at its narrowest point.@  Instead, according to the planning director, Athe land was annexed as a
result of a carefully made public policy decision in which Missouri City
identified that it had the greatest government interest in the area in
question, and in the surrounding development.@  Missouri City argues that, because its reason
for the annexation was not prohibited, it did not violate section 43.0545.

In
contrast, appellees contend the italicized phrase modifies the verb Ais located.@  They argue because the attempted annexation
extends from a strip of land that is twenty-five feet wide at its narrowest
point, the annexation violates section 43.0545.

A
court=s objective in construing a
statute is to determine and give effect to the legislature=s intent.  Tex‑Air Helicopters, Inc. v.
Galveston County Appraisal Review Bd., 76 S.W.3d 575, 581 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied).  We presume the legislature
intended the plain meaning of the words it used.  Id. 
If possible, we must ascertain the legislature=s intent from the language of the
statute and not resort to extraneous matters for an intent not stated in the
statute.  Id.  When interpreting a statute, we consider the
entire act, its nature and object, and the consequence that would follow from
each construction.  Id.  We must reject any statutory interpretation
that defeats the legislative purpose.  Id.  In interpreting section 43.054 of the Local
Government Code, we may look to the Code Construction Act for assistance.  See Tex.
Loc. Gov=t Code
Ann. ' 1.002 (Vernon 1999) (stating
Code Construction Act applies to construction of each provision of the Local
Government Code, except as otherwise expressly provided); Tex. Gov=t Code Ann. ' 311.002 (Vernon 1998) (stating
chapter applies to each code enacted by 60th or subsequent legislature as part
of state=s continuing statutory revision
program and applies to amendment of such codes).








Under
the Code Construction Act, even when a statute is not ambiguous on its face, we
may consider other factors to determine the Legislature=s intentCfactors including, but not
limited to (1) the object sought to be obtained; (2) the circumstances of the
statute=s enactment; (3) the
legislative history; (4) the common law or former statutory provisions,
including laws on the same or similar subjects; and (5) the consequences of a
particular construction.  See Tex. Gov=t Code Ann. ' 311.023(1)B(5) (Vernon 1998); Helena
Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001).  Additionally, we consider the statute as a
whole rather than its isolated provisions. Helena Chem. Co., 47 S.W.3d
at 493; Battaglia v. Alexander, 93 S.W.3d 132, 146 (Tex. App.CHouston [14th Dist.] 2002, pet.
granted).  We must presume the
Legislature intends an entire statute to be effective and that a just and
reasonable result is intended. See Tex.
Gov=t Code
Ann. ' 311.021(2),(3)
(Vernon 1998); Battaglia, 93 S.W.3d at 146.

We
must determine whether the italicized phrase modifies Aannex@ or Ais Alocated.@  Under the interpretive doctrine of last
antecedent, unless a contrary intention appears, Aqualifying words, phrases, and
clauses are to be applied to the immediately preceding words or phrase.  Such words, phrases, and clauses are not to
be construed as extending to or modifying others which are more remote. . . .@  82 C.J.S. Statutes ' 333 (1953) (footnotes omitted).  Applying this doctrine, the italicized
phrased modifies Ais located,@ not Aannex.@  Nevertheless, the doctrine of last antecedent
is Amerely an aid to construction
to be used in ascertaining the legislative intent.@  Id. 
(footnote omitted).  The doctrine does not apply when Athere is something in the
subject matter or dominant purpose of the statute that requires a different
interpretation.@  Id. 
(footnote omitted).








Section
43.0545 originated as part of 1999 Senate Bill 89.  Although the language of subsection (a) did
not change from introduction through enrollment, the bill analyses differed at
various points in the legislative process. 
The bill analyses for the introduced version, the senate committee
report, and enrolled version read as follows: 
AProhibits a municipality from
annexing an area located in the municipality=s extraterritorial jurisdiction
if the only reason for annexation is that the area is contiguous to the municipal
territory, which is less than 1,000 feet in width at its narrowest point.@  Senate
Comm. on Intergovernmental Relations, Bill Analysis, Tex. S.B. 89, 76th
Leg., R.S. (1999) (analyses for  introduced version, senate committee
report, and enrolled version).  These
analyses appear to support Missouri City=s interpretation of section
43.0545.

The
bill analysis for the engrossed version, however,  reads: 
AProhibits a municipality from
annexing an area that is located in the extraterritorial jurisdiction of the
municipality only because the area is contiguous to municipal territory that is
less than 1,000 feet in width at its narrowest point.@  Id. (analysis for
engrossed version).  Finally, the
analysis for the house committee report reads: 
AProhibits a municipality from
annexing an area within its ETJ only because it is contiguous to municipal
territory that is less than 1,000 feet wide at its narrowest point.@  Id. (analysis for
house committee report).  These
analyses support the conclusion the clause introduced by Abecause,@ is intended to modify Ais located.@

The
latter conclusion is reinforced by the Interim Report of the Senate Interim
Committee on Annexation and by questioning during testimony before the Senate
Committee on Intergovernmental Relations. 
In both contexts, one finds concern about misuse of the ETJ created by
earlier annexations of narrow strips of land.

The
Interim Committee recommended strengthening the definition of territory
eligible for annexation.  The committee
noted Local Government Code section 43.021 required an area be Aadjacent to a municipality@ to be subject to annexation,
but expressed concern that Aadjacent to a municipality@

has
been construed to permit cities to annex areas located a considerable distance
from the principal area of the city, so long as the area is connected at some
point to the city limits.  This practice
raises public policy questions as to whether using narrow strips to annex
remote areas facilitates orderly urban planning, and whether the use of
grandfathered strips of less that [sic] 1,000 feet is consistent with the
intent of ' 43.021.

 

Senate Interim Comm. on Annexation, Interim Report, 75th Leg. 35 (Sep. 3, 1998) (footnote
omitted) (available from the Legislative Reference Library of Texas:
www.lrl.state.tx.us).








At
the hearing before the Senate Committee on Intergovernmental Relations, Senator
Jon Lindsay, co-author of Senate Bill 89, commented Athe point that really brings me
rather whole-heartedly into this fray@ was a city=s  abuse of the privilege of developing the ETJ
by using strips that extended the ETJ twenty or more miles from the Areal city.@  Hearings on Tex. S.B. 89 Before the Senate Comm. on Intergovernmental Relations,
76th Leg., R.S. (Mar. 10, 1999) (during testimony of James Bertram).  Testifying for the bill, Alan Rendl,
President of the Spirit of North Harris County Coalition, expressed concern
about municipalities Aleapfrogging@ non-revenue producing areas to
get to higher-valued suburbs, with the resulting creation of pockets of
low-income, poor infastructure communities. 
Id. (testimony of Alan Rendl).

Finally,
Missouri City=s interpretation of section
43.0545 does not comport with the perceived need to curb unbridled
annexation.  A city would always have
another reason, usually financial, for annexing a particular parcel of land.

We
conclude the legislature intended section 43.0545 to prohibit exactly the kind
of annexation Missouri City attempted here: annexation of land that lies within
the municipality=s extraterritorial jurisdiction
solely by virtue of the fact the land is Acontiguous to municipal
territory that is less than 1,000 feet in width at its narrowest point.@  Tex.
Loc. Gov=t Code
Ann. ' 43.0545(a) (Vernon Supp.
2003).

 Accordingly, we overrule issue six and uphold
the summary judgment in favor of appellees. 
Given our resolution of issue six, we do not need to address issues
three through five, which relate to the alternative grounds for summary
judgment.

Issue
Seven: Denial of Motion to Strike Alvin=s Intervention








In
issue seven, Missouri City argues the trial court erred when it allowed Alvin
to intervene seeking the same relief sought in the quo warranto action and
awarded attorney=s fees to Alvin.  In its motion to strike Alvin=s interventionCfiled two months after the
trial court had granted summary judgment in favor of Alvin and after appellees
had filed their request to quantify attorney=s feesCMissouri City argued the
intervention was improper because (1) quo warranto was the only appropriate
action for the relief Alvin sought and (2) the intervention was duplicative of
the State=s quo warranto action.  Almost two weeks later, in its response to
the State and Alvin=s motion to quantify attorney=s fees, Missouri City opposed
the award of attorney=s fees.[12]

Texas
Rule of Civil Procedure 60 provides, AAny party may intervene by filing
a pleading, subject to being stricken out by the court for sufficient cause on
the motion of any party.@  Tex.
R. Civ. P. 60.  A motion to strike
an intervention is addressed to the discretion of the trial court.  Young v. Young, 693 S.W.2d 696, 698  (Tex. App.CHouston [14th Dist.] 1985, writ
dism=d) (citing Mendez v. Brewer,
626 S.W.2d 498, 499 (Tex. 1982)).  A
trial court abuses its discretion in striking the plea in intervention when (1)
the intervenor could have brought the same action or any part thereof in its
own name, (2) the intervention will not complicate the case by an excessive
multiplication of the issues, and (3) the intervention is almost essential to
effectively protect the intervenor=s interest.  See Benson v. Anderson, 899 S.W.2d
272, 274 (Tex. App.CHouston [14th Dist.] 1995, writ
denied) (citing Guar. Fed. v. Horseshoe Operating Co., 793 S.W.2d 652,
657 (Tex. 1990)).

A
private challenge to annexation is permitted when the annexation ordinance is
void because the municipality exceeded its authority to annex.  Alexander Oil Co. v.
City of Seguin, 825 S.W.2d 434, 438 (Tex.1991).  Such was Alvin=s challenge here.  Thus, Alvin could have brought the challenge
it its own name.  Because Alvin=s issues were identical to those in
the quo warranto action, the
intervention did not complicate the case by an excessive multiplication of
issues.

In
City of Bridge City v. State ex. rel. City of Port Arthur, the Beaumont
Court of Appeals rejected an argument similar to Missouri City=s argument in the present case:








Appellant agrees that attorney=s fees may be recovered in declaratory
judgment actions, however appellant contends that the actions taken by the City
of Port Arthur was exclusively in quo warranto as opposed to action for
declaratory relief.  It is clear to us
from the record that the action originally brought by Port Arthur was pursuant
to sections 37.001B37.011 Civil Practice & Remedies
Code.  The relief sought by Port Arthur
was for declaratory judgment.  The trial
court found as a matter of law that Port Arthur was entitled to the relief it
sought and granted the declaratory judgment. 
We know of nothing that would prevent appellee, City of Port Arthur,
from proceeding in a dual capacity as relator in quo warranto and plaintiff in
declaratory judgment.  Patton v.
Nicholas, 269 S.W.2d 482, 484 (Tex. Civ. App.CEl Paso 1954), rev=d in part on [other] grounds, 279 S.W.2d 848 (Tex. 1955); James
v. Perry, 208 S.W.2d 145, 146 (Tex. Civ. App.CAustin 1948[,] writ ref=d n.r.e.).

Appellant seems to argue alternatively that this case
involves both declaratory judgment for which attorney's fees are recoverable, and
quo warranto for which attorney's fees are not recoverable and since Port
Arthur did not segregate the proof of charges attributable to each action. . .
.

. . .

It is apparent to this Court
that appellee Port Arthur=s action in quo warranto and
for declaratory judgment were so intertwined and interrelated as to defy
segregation, and that the trial court did not err in its award of attorney=s fees in the sum of $56,089.95
through the entry of judgment in this case.

792
S.W.2d 217, 228 (Tex. App.CBeaumont 1990, writ denied)
(citations omitted).

The
reasoning and conclusion of the Beaumont court of appeals apply to the present
case.  We overrule issue seven.

CONCLUSION

We
affirm the judgment of the trial court.

 

 

/s/      John
S. Anderson

Justice

 

Judgment rendered and Opinion
filed November 13, 2003.

Panel consists of Chief Justice
Brister and Justices Anderson and Seymore.











[1]  Unless it is
necessary to differentiate, we refer to the City of Missouri City, its mayor,
and its council members collectively as AMissouri
City.@  When it is
necessary to differentiate the city from its officials, we use the designation,
Athe City of Missouri City.@  We refer to
the City of Alvin as AAlvin@; and the State of Texas, as AState@; and to Alvin and the State collectively, as
appellees.





[2]  The preceding
description is based in part on the legal description and in part on Exhibits 1
and 2 to the affidavit of Wayne Neumann, Missouri City=s Director of Planning.  The legal description defining the 1960
annexation area does not use meets and bounds, but refers to boundaries of
earlier surveys, boundaries of 1960 county commissioner precincts, various bodies
of water, and county lines.  Also, instead of plotting a center-line and
stating the strip was to extend on either side of the line, the surveyor
plotted a line, then repeated the original calls, essentially setting them 100
feet to the inside of the original calls. 
In doing so, however, the surveyor omitted twelve calls defining the
path around the south of Manvel.  As Neumann=s
exhibits show, however, it is possible to supply the necessary calls and
describe the annexed strip.





[3]  Section 42.041
provides:

 

(a) A municipality may not be incorporated in the
extraterritorial jurisdiction of an existing municipality unless the governing
body of the existing municipality gives its written consent by ordinance or
resolution.

 

(b) If the governing body of the existing municipality
refuses to give its consent, a majority of the qualified voters of the area of
the proposed municipality and the owners of at least 50 percent of the land in
the proposed municipality may petition the governing body to annex the area.  If the governing body fails or refuses to
annex the area within six months after the date it receives the petition, that
failure or refusal constitutes the governing body=s
consent to the incorporation of the proposed municipality.

 

(c) The consent to the incorporation of the proposed
municipality is only an authorization to initiate incorporation proceedings as
provided by law.

 

(d) If the consent to initiate incorporation
proceedings is obtained, the incorporation must be initiated within six months
after the date of the consent and must be finally completed within 18 months
after the date of the consent.  Failure
to comply with either time requirement terminates the consent.

 

(e) This section applies only to the proposed municipality=s area located in the extraterritorial jurisdiction of
the existing municipality.

 

Tex. Loc.
Gov=t Code Ann. ' 42.041 (Vernon 1999).





[4]  Section
43.0545 provides:

 

(a) A municipality may not annex an area that is
located in the extraterritorial jurisdiction of the municipality only because
the area is contiguous to municipal territory that is less than 1,000 feet in
width at its narrowest point.

 

(b) A municipality may not annex an area that is
located in the extraterritorial jurisdiction of the municipality only because
the area is contiguous to municipal territory that:

 

(1) was annexed before September 1, 1999; and

 

(2) was in the
extraterritorial jurisdiction of the municipality at the time of annexation
only because the territory was contiguous to municipal territory that was less
than 1,000 feet in width at its narrowest point.

 

(c) Subsections (a) and (b) do not apply
to an area:

 

(1) completely surrounded by incorporated territory of
one or more municipalities;

 

(2) for which the owners of the area have requested
annexation by the municipality;

 

(3) that is owned by the municipality; or

 

(4) that is the subject of an industrial district
contract under Section 42.044.

 

(d) Subsection (b) does not apply if the minimum width
of the narrow territory described by Subsection (b)(2), following subsequent
annexation, is no longer less than 1,000 feet in width at its narrowest point.

 

(e) For purposes of this section, roads, highways,
rivers, lakes, or other bodies of water are not included in computing the 1,000‑foot
distance unless the area being annexed includes land in addition to a road,
highway, river, lake, or other body of water.

 

Tex. Loc.
Gov=t Code Ann. ' 43.0545 (Vernon Supp. 2003).





[5]  Texas Rule of
Civil Procedure 190.3, which applies to Level 2 discovery, provides in part:

 

. . . .All discovery must be conducted during the discovery
period, which begins when suit is filed and continues until:

. . . .

. . . the earlier of

 

(i) 30 days before the date set for trial, or

 

(ii) nine months after the earlier of the date of the
first oral deposition or the due date of the first response to written
discovery.

 

Tex. R. Civ. P. 109.3(b)(1)(B).





[6]  Local Government
Code section 41.003 provides:

 

(a) The governing body of a municipality may adopt an
ordinance to declare an area that is adjacent to the municipality and that
meets the requirements of Subsection (b) to be a part of the municipality.  The adoption of the ordinance creates an
irrebuttable presumption that the area is a part of the municipality for all
purposes.  The presumption may not be
contested for any cause after the effective date of the ordinance.

 

(b) An area qualifies for inclusion in a municipality
under this section only if, on the date of the adoption of the ordinance:

 

(1) the records of the municipality indicate that the
area has been a part of the municipality for at least the preceding 20 years;

 

(2) the municipality has provided municipal services,
including police protection, to the area and has otherwise treated the area as
a part of the municipality during the preceding 20 years;

 

(3) there has not been a final judicial determination
during the preceding 20 years that the area is outside the boundaries of the
municipality;  and

 

(4) there is no pending
lawsuit that challenges the inclusion of the area as part of the municipality.

 

(c) The date on which an area that is made a part of a
municipality under this section is considered to be a part of the municipality
is retroactive to the date on which the municipality began its continuous
treatment of the area as part of the municipality.  That date shall be used for all relevant
purposes, including a determination of whether territory allegedly annexed by
the municipality was adjacent to the municipality at the time of the purported
annexation.

 

Tex. Loc.
Gov=t Code Ann. ' 41.003 (Vernon 1999).





[7]  Alvin cited
two statutes of limitation:  Tex. Loc. Gov=t Code Ann. '' 43.901, 51.003 (Vernon Supp. 2003).  Section 43.901 provides:

 

A municipal ordinance defining boundaries of or
annexing area to a municipality is conclusively presumed to have been adopted
with the consent of all appropriate persons, except another municipality, if:

 

(1) two years have expired after the date of the
adoption of the ordinance; and

 

(2) an action to annul or
review the adoption of the ordinance has not been initiated in that two‑year
period. 

 

Tex. Loc. Gov=t Code Ann. ' 43.901 (Vernon Supp. 2003).

 

Section 51.003 provides in part:

 

(a) A governmental act or proceeding of a municipality
is conclusively presumed, as of the date it occurred, to be valid and to have occurred
in accordance with all applicable statutes and ordinances if:

 

(1) the third anniversary of the effective date of the
act or proceeding has expired; and

 

(2) a lawsuit to annul or
invalidate the act or proceeding has not been filed on or before that third
anniversary.

 

(b) This section does not apply to:

 

(1) an act or proceeding that
was void at the time it occurred . . . .

 

Tex. Loc. Gov=t Code Ann. ' 51.003(a), (b)(1) (Vernon
Supp. 2003).





[8]  The attorney=s fees bear post-judgment interest at the rate of ten
percent per year.





[9]  In the AFinal Judgment,@
rendered July 15, 2003, the trial court ordered, AThe City
of Missouri City, Texas shall pay to the City of Alvin, Texas attorney=s fees in the sum of $35,000 . . . .@  The request to
quantify attorney=s fees, however, was filed jointly by the State and
Alvin.  In its January 29, 2003 order
granting declaratory judgment, the trial court ordered Athat by the State of Texas on relation of the City of
Alvin, Texas and by the City of Alvin, Texas shall be awarded their reasonable
and necessary attorney=s fees . . . .@  In its May 9, 2003 order awarding attorney=s fees and costs, the trial court  stated, A[A]fter having
considered the affidavits submitted by the parties regarding the attorney=s fees and costs incurred by the State of Texas on
Relation of the City of Alvin, Texas and the City of Alvin, Texas, the Court
finds and hereby Orders that the City of Missouri City, Texas shall pay to the
City of Alvin, Texas, attorney=s fees in the sum of $35,000. . . .@





[10]  See note 4,
above.





[11]  The fact
issues Missouri City listed as Aremaining for discovery,@ also
related only to the first two grounds for summary judgment: whether Alvin
consistently taxed the area and provided municipal services; the existence of
discrepancies in the legal description; information from other municipalities
regarding waiver and estoppel; gaps in the documents Alvin had already
produced; an alleged 1993 disannexation; a 1996 dispute with Pearland; activity
in the twenty-year period before the 1960 annexation; failure to show the strip
on city maps; and procedural irregularities in the 1960 annexation.

 





[12]  See note 9
above.